FRANK DRAKE, Appellant, v. JOSEPH H. HODGSON, Respondent, Impleaded with HARRY GAY and Others, Defendants.

First Department, July 2, 1920.

Contracts — agreement between stockbrokers and customer.— anticipatory breach by bankruptcy of stockbrokers — pleadings — complaint — when allegation of tender by plaintiff unnecessary — stay of proceedings in action in State court.

A complaint which in substance alleges that the plaintiff employed the defendants as stockbrokers to buy and sell securities for him and that the defendants made an assignment for creditors and were subsequently adjudged bankrupts at a time when there was a balance due the plaintiff from the defendants on stock transactions, no part of which has been paid, should not be dismissed at the opening of the trial as failing to state a cause of action upon the sole ground that there is no allegation that the plaintiff tendered the amount of his debt to the brokers and demanded a return of securities pledged with them.

The petition in bankruptcy and the adjudication therein were a repudiation of the contract on the part of the defendants and was in law an anticipatory breach thereof which rendered neither a demand nor tender necessary.

Where a contract is repudiated or its performance made impossible, a tender and demand of performance need not be made to the party so repudiating the contract or rendering himself unable to perform it, and this principle obtains where performance is made impossible through the bankruptcy of such party.

It seems, that if the defendants believe that they can obtain a discharge of their debt to the plaintiff in bankruptcy, their procedure is to obtain a stay of further proceedings in this action in the bankruptcy court.

APPEAL by the plaintiff, Frank Drake, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 2d day of January, 1920, upon the dismissal of the complaint by direction of the court at the opening of the trial at Trial Term.

William F. Unger of counsel [Samuel Rubin with him on the brief], Goldman & Unger, attorneys, for the appellant.

Daniel Day Walton of counsel [Lemuel Bannister, William O. Hubbard and Edward W. Stitt, Jr., with him on the brief], Hart, Stevenson, Walton & Senior, attorneys, for the respondent.

MERRELL, J.:

This is an appeal by the plaintiff from a judgment dismissing plaintiff's complaint on defendants' motion, made at the opening of the trial, upon the ground that the complaint failed to state facts sufficient to constitute a cause of action.

The action is brought to recover a sum of money alleged to be due the plaintiff from the defendants for the alleged breach of a contract. The summons has been served only upon the defendant, respondent, Hodgson. The complaint alleges that the defendants were copartners engaged in the stock-brokerage business under the firm name and style of Gay & Sturgis; that during a period extending from 1907 down to on or about April 21, 1914, the plaintiff employed the defendants as his stockbrokers to execute his orders respecting the purchase and sale of securities; that the defendants accepted said employment and plaintiff agreed to furnish moneys and securities as margin for the purpose of carrying out his said orders; that during the period aforesaid the plaintiff gave numerous orders to the defendants to purchase and sell and deal in securities and deposited with the defendants large sums of money and securities as margin for that purpose; that such money and securities were so deposited by the plaintiff with the defendants upon the representation that plaintiff's orders had been and were being executed; that on April 21, 1914, according to notices and statements sent the plaintiff by the defendants, the defendants had on hand and in their possession or under their control securities belonging to the plaintiff of the value of $308,027.87, and that plaintiff owed the defendants $187,062.61 for advances stated by the defendants to have been made in the execution of plaintiff's said orders, thus leaving a balance due plaintiff of $120,965.26. The complaint then states that plaintiff duly performed all the conditions of the agreement to be by him performed, and that on the 21st day of April, 1914, the defendants filed an assignment for the benefit of creditors, and that on the 22d day of May, 1914, a petition in involuntary bankruptcy was filed against the defendants, and on June 8, 1914, said firm was adjudicated a bankrupt; that plaintiff had received none of said securities, except certain stock of the value of $3,040, leaving as plaintiff's due the sum of $117,925.26, no part of which

has been paid, and the complaint demands judgment for said sum.

The answer is a general denial of all of the allegations contained in the complaint. The answering defendant, therefore, denied that the defendants had on hand securities belonging to the plaintiff, as stated in the complaint and of the value aforesaid.

The learned trial court held that as the complaint contained no allegation that the plaintiff had tendered the amount of his debt and demanded a return of the securities, it was, therefore, defective.

It is the contention of the appellant that the complaint states a good cause of action, and that the filing of the bankruptcy petition and the adjudication therein were a repudiation of the contract on the part of the defendants and was in law an anticipatory breach thereof which rendered neither a demand nor tender necessary, and his contention seems to be supported by the decisions.

It is obvious that, at the time of the filing of the petition in bankruptcy, a contractual relation existed between the plaintiff and the defendants. At that time no demand had been made upon the defendants by the plaintiff for the return of the securities, and the defendants had not demanded from the plaintiff payment of his obligation to them. So that nothing had taken place prior to the assignment for the benefit of creditors and the filing of the petition in bankruptcy which would give to either party a right of action. It, therefore, follows that unless the institution of the bankruptcy proceeding amounted to a repudiation of the contract on the part of the defendants and an anticipatory breach thereof, the plaintiff would have no provable claim in bankruptcy, and the defendants could not, therefore, be discharged in the bankruptcy proceeding from their liability to the plaintiff. At the outset it may be well to consider the relations which existed between the parties at the time the petition in bankruptcy was filed. As stated in the complaint, the defendants were stockbrokers engaged in their business and were obligated to have the securities in question in their hands belonging to the plaintiff. Plaintiff on his part owed certain sums of money to the defendants. It was the duty of the defend-

ants at all times to have on hand and under their control ready for delivery the aforesaid securities. It was also their obligation to deliver the same to the plaintiff when required by him upon the receipt of the advances and commissions due to the brokers. The obligation rested upon the plaintiff to take the shares so purchased, for him whenever required so to do by the defendants upon tender thereof to him. (*Markham v. Jaudon*, 41 N. Y. 235.) The defendants also held these securities alleged to have been purchased for the plaintiff as security for margins and to secure such advances as had been made by the defendants. To that extent the relation of pledgor and pledgee existed between the parties. The relationship between the defendants and the plaintiff was clearly determinable at the will of either of the parties. Had the plaintiff prior to the filing of the petition in bankruptcy tendered to the defendants the amount due them and demanded the delivery to him of his securities, and had the defendants refused to make such delivery, they would undoubtedly have been guilty of conversion. Even in that event the plaintiff would have had a good cause of action for breach of contract as well as an action in tort for conversion. So far as alleged in plaintiff's complaint, no such demand or tender was made, so that prior to the filing of the petition in bankruptcy there is nothing to show that the defendants were guilty of conversion.

It is the well-settled law that where a contract is repudiated or its performance made impossible, a tender and demand of performance need not be made to the party so repudiating the contract or rendering himself unable to perform it. (*Hartley v. James*, 50 N. Y. 38; 13 C. J. 661; *Woolner v. Hill*, 93 N. Y. 576; *Ferris v. Spooner*, 102 id. 10; *Smith v. Rogers*, 42 Hun, 110; affd., 118 N. Y. 675.) Therefore, if the filing of the involuntary petition in bankruptcy did constitute in law a repudiation of the contract which existed between the parties at the time, or an anticipatory breach thereof, no duty rested upon the plaintiff to make any demand before bringing suit.

The law was unsettled upon this point for many years, there being numerous Federal decisions on both sides of the question. However, the law has now been settled by the decision of the United States Supreme Court in the case of *Central Trust Com-*

*pany* v. *Chicago Auditorium* (240 U. S. 581). In that case the Chicago Auditorium Association had made a contract with the Frank E. Scott Transfer Company for a term of five years in which the association granted to the transfer company a baggage and livery privilege, the transfer company to pay a stipulated price each year for the privilege. About four months after the contract was made an involuntary petition in bankruptcy was filed against the transfer company, and the Central Trust Company was appointed trustee. The auditorium association filed its claim in the bankruptcy court based on a breach of the contract on the part of the bankrupt. At the time of the filing of the petition the contract was being duly performed by both parties. Mr. Justice PITNEY, in delivering the opinion of the court, said:

" It is argued that there can be no anticipatory breach of a contract except it result from the voluntary act of one of the parties, and that the filing of an involuntary petition in bankruptcy, with adjudication thereon, is but the act of the law resulting from an adverse proceeding instituted by creditors. * * * As was said in *Roehm* v. *Horst*, 178 U. S. 1, 19: ' The parties to a contract which is wholly executory have a right to the maintenance of the contractual relations up to the time for performance, as well as to a performance of the contract when due.' Commercial credits are, to a large extent, based upon the reasonable expectation that pending contracts of acknowledged validity will be performed in due course; and the same principle that entitles the promisee to continued willingness *entitles him to continued ability on the part of the promisor.* In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement. It is the purpose of the Bankruptcy Act, generally speaking, to permit all creditors to share in the distribution of the assets of the bankrupt, and to leave the honest debtor thereafter free from liability upon previous obligations. *Williams* v. *U. S. Fidelity Co.*, 236 U. S. 549, 554. Executory agreements play so important a part in the commercial world that it would lead to most

unfortunate results if, by interpreting the Act in a narrow sense, persons entitled to performance of such agreements on the part of bankrupts were excluded from participation in bankrupt estates, while the bankrupts themselves, as a necessary corollary, were left still subject to action for non-performance in the future, although without the property or credit often necessary to enable them to perform. *We conclude that proceedings, whether voluntary or involuntary, resulting in an adjudication of bankruptcy, are the equivalent of an anticipatory breach of an executory agreement* within the doctrine of *Roehm* v. *Horst, supra.*"

The above decision is in harmony with numerous decisions theretofore made by various State and Federal courts, among which are the following: *Matter of Swift* (112 Fed. Rep. 315); *Matter of Neff* (157 id. 57); *Wood* v. *Fisk* (156 App. Div. 497). All of these cases seem to be directly in point, and the *Swift* case is on all fours with the facts in the instant case. The opinion was written by Judge PUTNAM, and is, in part, as follows:

" We have, therefore, to deal with an agreement by which the bankrupts bound themselves to deliver certain stocks to Dee on payment of the balance due from him to them, and by which also the bankrupts were entitled, on reasonable notice, to tender the stocks to their customer and claim like payment. But neither party fulfilled the ordinary conditions applicable to such relations. Neither made a demand or tender. Consequently, according to the ordinary rules of law, no cause of action arose in favor of either party against the other. The position is one, therefore, to be solved by the law itself.  *  *  *

"As we have already said, the solution of the proper relations of the parties in this case growing out of the assignment, or out of the filing of the petition in bankruptcy, is fixed by the law; and the simple rule, based on fundamental principles, and traceable in the text writers and decisions of the courts for fully a century, must be applied, to the effect that, ' *where a man has disabled himself from performing his contract, it is unnecessary to make any request or demand for performance.*' * * *

" Indeed, it is such an ancient rule, and so universally recognized, as to need no citation of authorities to justify its

First Department, July, 1920.                    [Vol. 192.

application in this case, where, as we have said, neither party has done any act ordinarily necessary to entitle him to enforce the contract, or recover damages for its breach, but each has left the mutual relations to be worked out by the law.

" These propositions may be made somewhat clearer by comparing the position of a banker with that of a stock-broker. A banker has not, ordinarily, on hand sufficient funds to meet the checks of all his depositors if they should all draw simultaneously, and he is not expected to do so. A like rule applies to stockbrokers. In the one case as well as in the other, so long as either remains solvent, he is presumed to be able to meet his contracts; and no action can be maintained against a banker by a depositor without first drawing a check or making some other proper demand, nor, in the case of a stockbroker, without a tender by his customer of the balance due him, and a demand of his stock. On the other hand, when either has made a voluntary assignment for the benefit of creditors, or gone into bankruptcy, or, perhaps, when he has committed some other notorious act of insolvency, he has parted with the control of his assets, and the law assumes, as is the fact, that his ability to perform his contracts has terminated, and that a demand and tender would be futile, and, ordinarily, an action may at once be brought.   *   *   *

" We have already seen that in the case at bar the proceedings in bankruptcy rendered unnecessary a demand and tender, and, like the great mass of matters affected by such proceedings, we must hold that this proof of debt relates to the time when they were commenced. From that time the stocks in question were put beyond the power of the stockbrokers to deliver effectually. The contract ripened simultaneously with the beginning of the proceedings in bankruptcy, as the consequence thereof in connection with the adjudication which followed. Of course, as everything related back to the filing of the petition, the ripening of the claim did not occur before it was filed, nor afterwards, but simultaneously with it, as already said. Consequently, by necessary effect, there was created and existed, when the proceedings commenced, a provable claim. Whether Dee had the option of withholding his claim and ripening it by a demand subsequently,— a matter to which we have already referred,— he waived that

option by his proof of debt, and he thus elected, as he had a right to do, to assume that demand and tender had been rendered unnecessary, and to liquidate his claim accordingly, subject to the right of election on the part of the trustee to rehabilitate the contract which we have already referred to, but which is of no importance in this case, as no such right was exercised."

It, therefore, follows that the filing of the petition in bankruptcy on the part of the defendant was, within the well-settled law, a repudiation and an anticipatory breach of the defendants' obligation to the plaintiff.

The filing of such petition and the subsequent adjudication was notice to the world that defendants could no longer perform their contractual obligations. They could no longer retain a seat upon the Stock Exchange, if they had one. All of their assets, including the stock in question, if it actually did exist, would pass into the hands of the trustee in bankruptcy, and the filing of the petition in bankruptcy rendered it not only unnecessary, but absolutely unsafe, for the plaintiff to make a tender of money to the defendants. Moreover, the trustee in bankruptcy was under no obligation to take over the contract or to assume any obligations thereunder, and was, under the circumstances, under no obligation, either legal or otherwise, to endeavor to collect the money claimed to be due from the plaintiff. Plaintiff could not allege any demand or tender upon the defendants before the filing of the petition, because none had been made. If, indeed, it was necessary to make a demand upon the trustee prior to the commencement of the action, then it is evident that no cause of action existed prior to the filing of the petition in bankruptcy. If the contention of the respondent is correct and if it was necessary for the plaintiff to make a demand upon and tender to the trustee, then the debt was not provable in bankruptcy and the defendants cannot be discharged from liability to pay the same in these bankruptcy proceedings. By taking any such position the defendants are arguing against their own interests, and contrary to the decided cases.

This question was exhaustively discussed by this court in the case of *Wood* v. *Fisk* (156 App. Div. 497). The opinion was written by Mr. Justice McLAUGHLIN and concurred in by

all of the members of the court then sitting, except Mr. Justice SCOTT, who wrote a dissenting opinion. Mr. Justice McLAUGHLIN in the prevailing opinion said, in part, as follows: "It is settled by numerous authorities that under this section a claim for breach of contract may be proved, even though the time for performance had not arrived when the petition was filed. This is upon the theory that the bankruptcy proceeding may be considered as an anticipatory breach and a complete disablement on the part of the debtor, thus rendering him liable for damages immediately upon filing the petition. * * * Where one party to an executory contract puts it out of his power to perform, there is an anticipatory breach which gives the other party an immediate right of action for the damages which he suffers thereby. * * *

" Here the bankruptcy proceeding made it impossible for the defendants to perform the contract — the legal effect of which was an out and out repudiation of the contract by the defendants or a complete disablement — and in either case the contract itself was broken."

Mr. Justice SCOTT dissented on the ground that the promissory note involved in the suit was not due at the time the petition in bankruptcy was filed, and, therefore, was not provable. In his dissenting opinion he stated that the facts were not as strong as in the stockbrokers cases cited. Mr. Justice SCOTT then said: " The case at bar differs radically from the ordinary cases of stockbrokers who hold collateral for debts owing to them by their customers. Ordinarily in such cases there is no time obligation, but the debt is always due so that the creditor may demand payment at any time, and the debtor may likewise tender payment at any time. It is in such cases that it has been held that *no tender and* demand is necessary on the part of the debtor, but *that his claim for the value of his securities over the amount of his debt becomes due immediately upon the filing of the petition.* (*Matter of Swift,* 112 Fed. Rep. 315.)"

The language thus used by Mr. Justice SCOTT is peculiarly applicable to the case at bar, where the suit is brought on the contract for the value of the plaintiff's securities over the amount of the plaintiff's debt to the defendants. The plaintiff had a right to make an election of his remedies,

and to select the tribunal in which to bring his action. He had a right to bring his action on contract in the State courts or to file his proof of claim, based upon the breach of the contract, in the bankruptcy court. In either event, the right of recovery would be based upon breach of contract on the part of the defendants. Even assuming that the plaintiff had made a demand upon the trustee, such demand would only be necessary in case the plaintiff desired to sue the trustee in conversion, which action would lie against the trustee only in case the trustee had actually in his possession the plaintiff's securities in condition to be identified. The defendants apparently are defaulters and owe the plaintiff a large sum of money. If the defendants have reason to believe that they can actually obtain a discharge in bankruptcy and have not concealed their assets or committed any other acts which would prevent the granting of such discharge, they can readily obtain a stay of further proceedings in this action from the bankruptcy court. Such is the usual practice. On obtaining their discharge in bankruptcy, such discharge could then be set up as a defense in bar of the plaintiff's right of recovery. As above stated, however, such discharge in bankruptcy cannot be set up in bar, if the debt here sued upon is not provable in these bankruptcy proceedings.

It is claimed by the respondent that the decision in this court in *Wood* v. *Fisk* (*supra*) was not entirely in accord with the decision made by the Court of Appeals on appeal to that court. (*Wood* v. *Fisk*, 215 N. Y. 233.) Upon a careful reading, however, of the opinion of Judge CARDOZO, it appears that the Court of Appeals in nowise reversed or criticized the decision of this court. The case was affirmed, the court basing its decision on the fact that prior to the petition in bankruptcy the bankrupt had wrongfully repledged the stocks in question, and that for that reason a cause of action had arisen, without any possible question, before the filing of the petition in bankruptcy. The court, therefore, was not obliged to go into the question, also considered by this court, as to whether or not the filing of the petition in bankruptcy was a repudiation and an anticipatory breach of the contract relations between the parties. The decision of the Court of Appeals was handed down on June 1, 1915, and the

decision of the United States Supreme Court in the *Chicago Auditorium* case was decided on April 3, 1916. It is probable that had the Court of Appeals gone into the question relating to the repudiation of the broker's contract by the filing of the petition in bankruptcy, it would have followed the opinion of Mr. Justice MCLAUGHLIN in this court. The decision of the United States Supreme Court in the *Chicago Auditorium* case has, however, now settled the law.

It, therefore, follows that the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and GREENBAUM, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.