*93 N. J. Eq.*          In re Vieweger.

In the matter of the application on behalf of LEO ARTHUR VIEWEGER, an infant, for sale of lands, &c.

[Decided May 15th, 1922.]

1. The mother of an illegitimate minor child is its natural guardian and is bound to maintain it; but this court has no jurisdiction to compel her to do so, and the extent of her duty in that regard arises only when she asks for an allowance for that purpose out of its estate.

2. As a widow is not, as a general rule, bound to support her minor child out of her own property if the infant has means of its own, and, as she is entitled to indemnity out of its estate for money expended by her for its maintenance and education within proper limits, so the mother of an illegitimate child, who is ordinarily in the same situation as though she were a widow, is entitled to the same sort of indemnity.

3. When an allowance for past support and education of an infant is prayed for on behalf of a parent or guardian, the court will make such an allowance only as it would have made if the same had been asked for in advance; and in fixing such allowance the court will not do more than indemnify for actual disbursements, and is bound to set up the statute of limitations in favor of an infant against a demand of a mother, even though the minor does not desire that bar to be interposed, unless the case discloses some circumstance which renders such defence inequitable.

4. The guardian of an infant whose parents have little income may use the income of the estate of the child for its education along lines for which it shows special aptitude.

5. The question of the expenditure of the personal estate of an infant is generally left to the judgment of his guardian in the first instance, subject to approval on the settlement of his accounts; and his judgment on the question of the amount of such expenditure is not subject to judicial revision so long as the guardian exercises a fair and honest discretion.

6. It is to protect minors that guardians are appointed for them to conserve their estates, and to see to it that their property is not wasted; and this, because of the real or supposed incapacity of infants to make judicious contracts; and a contract which the law would avoid, if made by an infant, the court will not allow a guardian to make for him.

7. When so ordered and directed by the chancellor, a special guardian of an infant may lawfully exercise the powers of a general guardian with reference to the proceeds of the sale of the infant's lands which come to his hands as such special guardian under the act relative to the sale of infants' lands. *Comp. Stat. p. 2804.*

On application by guardian for directions, &c.

*Mr. Joseph Thompson,* guardian, *pro se.*

WALKER, CHANCELLOR.

On July 12th, 1917, Hon. Joseph Thompson, of Atlantic City, was appointed special guardian of Leo Arthur Vieweger, of Weymouth township, Atlantic county, and there came to the hands of the guardian the sum of $6,000, which he invested on first bond and mortgage, and he now has on hand the sum of $1,620 interest on the mortgage, no part of which has been disbursed. The infant is an illegitimate son of Professor Leo Vieweger and Emma Hensel, who are and have been living together as man and wife since July 30th, 1903, no ceremonial marriage having been contracted between them because the professor has a wife living in Germany, who deserted him there many years ago and has refused to come to this country and join him. The son of Professor Vieweger and Emma Hensel was born May 2d, 1904, and is therefore now eighteen years of age. The mother of the infant has requested the guardian to reimburse her for the maintenance and schooling of the child, and that the boy be allowed sufficient money to purchase an automobile to use in going from his mother's house, in Estelville, to Ocean City, to attend a summer school. Heretofore he has attended school in Atlantic City, graduating from the high school there. These natural parents appear not to be in a position to give the boy the education which they and he think he is entitled to have. The guardian says he is in doubt as to what course should be pursued with reference to the accumulation of interest in his hands, but believes that it should be applied at least from this time on to the care and education of the minor, and asks the advice of this court in the premises. Letters of the mother and her son to the guardian are annexed to the petition. The boy is bright and has exalted ideas, as his letter to Judge Thompson indicates.

The mother of an illegitimate child is its natural guardian and bound to maintain it. *Friesner* v. *Symonds, 46 N. J. Eq. 521.* By the common law an illegitimate child is *nullius filius,*

the son of no one (*Ibid. 527*), but our statutes establish the relation of parent and child between a mother and her illegitimate offspring. *Ibid. 528.* Thus, it appears that the mother of this boy is bound to support him; but this court has no jurisdiction to compel a parent to support an infant child, and the question of the extent of a parent's duty in that regard arises only when a parent asks for an allowance for that purpose out of the child's estate, as is done in this case. *Alling v. Alling, 52 N. J. Eq. 92.* The father is eliminated from this case, whether he is of ability to support the boy or not. I presume support from him could only be compelled, if at all, in proceedings by the overseer before a magistrate for which there appears to be no necessity. As a general rule a widow is not bound to support her minor children out of her own property if they have means of their own, and she is entitled to indemnity out of their estate for money expended by her for their maintenance within proper limits. *Pyatt v. Pyatt, 46 N. J. Eq. 285.* The mother in this case is practically in the same situation as though she were a widow. When an allowance for past support of an infant is asked for on behalf of a parent or guardian the court will make such an allowance only as it would have made if it had been asked for in advance. And in fixing such allowance the court will not do more than indemnify for actual disbursements. And this court is bound to set up the statute of limitations in favor of an infant against a demand of a parent, even though the minor does not desire the bar to be interposed, unless the case discloses some circumstance which renders such defence inequitable. *Alling v. Alling, supra.* The guardian of infant children whose parents have a small income, may use the income of the estate of the children for their education along lines for which they show a special aptitude. *In re Alexander, 79 N. J. Eq. 226.* But the court of chancery does not exercise jurisdiction to direct in advance expenditure by a guardian out of his ward's property unless there be special circumstances calling for such direction.

*In re Hannah Barry, 61 N. J. Eq. 135,* the application was to use part of the principal of an infant's estate for her support, and Vice-Chancellor Emery observed (at *p. 140*) that the gen-

eral policy in this state has been to leave the question of the necessity of the expenditure of the personal estate, both income and principal, to the judgment of the guardian, in the first instance, subject to affirmance on the settlement of his accounts, and that in all ordinary cases this course affords protection both to the guardian and the infant.

Where one acting in a fiduciary capacity is directed to apply so much of the income of a fund to the support of an infant as in his judgment may be necessary, the question as to the amount to be so applied is in the first instance committed to him, and his judgment on that question is not subject to judicial revision so long as he exercises a fair and honest discretion. *Read* v. *Patterson, 47 N. J. Eq. 595.*

The application of the above principles to the case in hand results in instruction to the guardian to reimburse the mother for the care and support of her infant son, if in fact she has supported him, during the period of six years last past, as the statute bars her right to recovery for a period anterior thereto, no circumstance appearing which renders such defence inequitable; that he expend sufficient money out of the boy's income, either future or accumulated, to provide him such an education as the guardian thinks he should properly have, and along lines for which he appears to show a special aptitude. Now, as to allowing the boy sufficient money to purchase an automobile to use in going from his home, in Estelville, Atlantic county, to Ocean City, Cape May county: For some time he attended school in Atlantic City. To do so he was obliged to go from Estelville to Mays Landing, five miles, to take a train to Atlantic City, which is about twenty-three miles. To go to Ocean City he will have to go to Mays Landing and there take a train to Ocean City, about twenty-two miles, unless he gets an automobile. If he owned an auto he could, I assume, proceed all the way to Ocean City in it, as he could have done to Atlantic City, if he had had one. As he was obliged to go from Estelville to Mays Landing to attend school in Atlantic City, he can, of course, do the same thing in order to go to school in Ocean City. It seems to be a matter of some impropriety to purchase an automobile for a minor out of his estate and turn it over to him.

It is to protect minors that guardians are appointed for them to conserve their estates, and to see to it that their property is not wasted. And this, because of the real or supposed incapacity of infants' minds to make judicious contracts. See *La Rosa* v. *Nichols, 91 N. J. Law 355, 357;* reversed, but on other ground, *S. C., 92 N. J. Law 375.* A contract which the law would avoid for the infant's protection, if made by him, the court will not allow a guardian to make for him. Therefore, I may say that I see no justification in law for the purchase for this boy of an automobile, the cheapest of which would be expensive, and which also would be expensive to maintain and operate. This request should be denied.

With respect to any amount to be paid the mother for expenses incurred in maintaining and schooling the boy within the period of statutory limitation, and, for allowances for his future maintenance and education, the guardian must exercise his own judgment as to necessity and reasonableness, subject to approval on the settlement of his account.

Judge Thompson is the special guardian of Leo Arthur Vieweger, appointed under the act relative to the sale of infants' lands (*Comp. Stat. p. 2804*), and is not his general guardian. The question is: May the court lawfully delegate to a special guardian appointed under this statute the powers of a general guardian with reference to the control and disposition of the proceeds of the sale made by the guardian of an infant's interest in real estate? This question, in my opinion, is to be answered in the affirmative. Section 9 of the act provides that when any special guardian appointed under it shall have sold the lands of an infant and has accounted, it shall be lawful for the chancellor to order and direct him to pay the proceeds, after deducting commissions and expenses, to the general guardian of the infant. *In the Matter of Anderson, 17 N. J. Eq. 536,* the court of errors and appeals held that an appeal would not lie from an order of the chancellor refusing to direct a special guardian appointed by him to pay over the moneys derived from a sale of the minor's land to the general guardian; and in the opinion Chief-Justice Beasley, speaking for the court, said: "The chancellor conceiving. apparently, that it was not for the interest of the infant to

suffer these moneys to be removed from the supervision of a court of equity, refused to grant the application, and it is from this order that the present appeal has been taken." And it was concluded that the order refusing the transfer of moneys from the special to the general guardian lay altogether in the discretion of the chancellor, and on that account was not appealable.

Observation on this score might well end here, but it is pertinent to make reference to the condition of the bond of a special guardian as provided for in section 2 of the act for the sale of infants' lands. It is "for a just and faithful performance of the trust reposed in such guardian and for the observance of such orders and directions as the chancellor shall from time to time make in the premises in relation to such trust." This clearly contemplates that the guardian shall perform the trust under such orders and directions as the chancellor shall from time to time make during its continuance. It cannot be thought that if the funds were not turned over to a general guardian the court would not permit their administration for the benefit of the infant during his minority, especially in a case like the instant one, where the income at least is needed for the infant's maintenance and education. That is not all: The first section of the act provides that from the institution of proceedings for the sale of infants' lands, the minor shall, so far forth as relates to the property sought to be sold, its proceeds and income, be considered the ward of the court of chancery. A ward in chancery is an infant who is under the superintendence of the chancellor. *Bouv. Law Dict. (Rawle's Rev.) 1210.*

I am clearly of opinion that a special guardian of an infant may lawfully exercise the powers of a general guardian with reference to the proceeds of the sale of the infant's lands which come to his hands as such special guardian under the act relative to the sale of infants' lands (*Comp. Stat. p. 2804*), when so ordered and directed by the chancellor.

The guardian will be entitled to five per cent. commission on the income. No commission on the *corpus* will be allowed until the guardianship ends on the infant attaining his majority, three years hence.