EDWARD JACOBSON, Respondent, *v.* SIMON A. MAILMAN, Appellant.

County Court, Oneida County, October 31, 1930.

*Tumposky & Tumposky,* for the appellant.

*Foley & Guile,* for the respondent.

HAZARD, J. Defendant is a pawnbroker. On March 7, 1928, one George Baker, or perhaps his wife, pawned a diamond ring with defendant, receiving therefor $200. The pawn ticket, which is known in this case as plaintiff's Exhibit 1, was given. It does not contain the name of the pledgor but the initials " G. B." appear thereon. It appears that soon thereafter Baker borrowed sixty dollars from the plaintiff and delivered to him the pawn ticket, supposedly as some sort of security.

There is no dispute about the facts in the case so far. Plaintiff

claims that in the latter part of March, 1928, he went to defendant's place of business and asked to see the ring and was shown it and told by defendant that it would cost him $212 to redeem it, and that he declined so to do, saying the ring was not worth that amount or anywhere near it. He further claims that he made a second visit to the defendant in July at which time he says he said to the defendant: " Now, if Mr. Baker should come after the ring during the month of August, don't give it to him. Hold it until I come back, which will be in September. He said ' All right.' " Later plaintiff says: " I said to Mr. Mailman I wont be back until September. Now be sure and hold that ring until I come back. He said ' All right.' " It was further stated by the plaintiff that he went to Mailman's " About the second week in September " and then learned that the ring in question had been redeemed by one of the Bakers. He was shown an entry on defendant's record book showing that the ring had been redeemed September 1, 1928. It is upon this state of affairs that this action was brought. It transpires that twenty dollars of the sum loaned by the plaintiff to Baker has been repaid, and plaintiff has been given a judgment against the defendant for the balance, forty dollars, with costs.

The situation is rather unusual and the appellant claims that no cause of action has been made out against him. It, therefore, becomes necessary to make a close analysis of the " rights " of the respective parties. Incidentally it should be mentioned that the defendant denies the claim of the plaintiff that at any time prior to the visit in September did the plaintiff exhibit the pawn ticket to him and tell him he was holding it. Defendant claims that no such transaction ever occurred and that the first he knew the plaintiff had any interest in the transaction was when plaintiff called upon him sometime in September. I think it can safely and easily be decided that if the defendant's version is correct, the verdict should be no cause of action. In other words, if Mr. or Mrs. Baker came to the defendant's place about the first of September and stated they had lost the pawn ticket and wished to redeem the pledged ring, that if defendant had no notice of any rights in the pawn ticket in this plaintiff, he might properly have taken what was coming to him from Baker and surrendered the ring.

The City Court, having found in favor of the plaintiff, must, I think, have decided the question of fact in favor of the plaintiff, that is, the City Court must have believed and decided that the plaintiff had, before the maturity of the pawn ticket, shown it to defendant and informed the defendant that he, plaintiff, was holding it. In view of the testimony of Attorney Suprio, I do not see that I can interfere with that finding. It is not the function of this court,

upon an appeal of this sort, to retry the case *de novo* and it has been said that this court should not reverse a judgment as against the weight of evidence unless it can be plainly seen that the lower court could not reasonably have arrived at the decision which it did. (*Murtagh* v. *Dempsey*, 85 App. Div. 204, 205.)

Many other citations to this effect could be made but I deem it unnecessary. I, therefore, consider that we should set out with the consideration of this case upon the basis that it was decided in the court below, and correctly, that the plaintiff had, during the lifetime of the pawn ticket contract, given to the defendant notice that he was holding it as a security. We thus come to a consideration of the rights and obligations of the parties. It may very likely be true that no obligation was raised by the requests of the plaintiff enumerated briefly above, that the defendant should hold the diamond ring and not deliver it to the Bakers until he, plaintiff, came back to town. Even assuming that the defendant promised that he would do that, as claimed by plaintiff, I do not see that there was any consideration for any such a promise. However, we must assume, I think, that the delivery of the pawn ticket by Baker to the plaintiff was for a purpose, and there can be no question but that the purpose was to give him some kind of security for the loan which he made to Baker thereupon. Speculating upon the rights that the plaintiff might have acquired by the possession of the pawn ticket, I would say that he probably had the right to redeem the pledge and hold the ring until his loan was repaid. This he did not do, and in fact upon his own statement declined to do, and appellant claims that thereby he forfeited all his rights thereunder. I am unable to agree with that contention; and the cases which appellant cites as authority for it do not, to my mind, sustain the proposition. Among them is the case of *Drake* v. *Hodgson* (192 App. Div. 676), in which the court says that it is the well-settled law that where a contract is repudiated or its performance made impossible, a tender and demand of performance need not be made to the party so repudiating the contract or rendering himself unable to perform it. The other cases cited are to the same effect, and appellant claims that when the plaintiff declined to redeem the pledge from the defendant his so doing constituted " an anticipatory breach of contract," and that, according to the cases cited, plaintiff's rights immediately terminated. I do not think the position is tenable. In the first place, there was no contract between the plaintiff and the defendant, and the plaintiff had never agreed then or within the six months' period to repay the $200 loan. There could not be " an anticipatory breach of contract " because there was no contract between the plaintiff and the defendant to breach.

I think the plaintiff had the right to hold that pawn ticket as security for his loan, and I think that if the defendant knew of the loan, and for the purposes of this decision he must be so held to have known, the defendant should not have given up the ring to the Bakers, upon any statement by them that the pawn ticket "was lost." He knew that it was not lost and that the plaintiff had it and that he was holding it as something in the nature of a security. I do not think he could, therefore, ignore the plaintiff's rights in the premises. Defendant had himself issued the pawn ticket, Exhibit 1. It provided on its face that it was "good for six months from date," and the concluding paragraph of it reads: "We will not be held responsible in any way after this pledge is delivered to the bearer of the ticket." The pawnbroker's contract was thus to run for a period of six months, and, incidentally, that is the term prescribed by the ordinance in effect in the city of Utica at that time.

I think it must be decided that the defendant was bound to hold that pledge, the ring, for the benefit of whoever held the ticket, during the term of the contract, which was six months and which expired on September 7, 1928; notwithstanding which it appears that the defendant received his money from the Bakers, and, ignoring the rights of the plaintiff, surrendered the ring to them on the first day of September. Irrespective of the question of whether the plaintiff was willing to redeem the ring, I think and have decided that he was entitled to have the *status quo* maintained during the lifetime of the pawnbroker's contract, because, if the defendant had refused to permit the Bakers to redeem their ring without producing the pawn ticket, nobody can say that they would not have paid their debt to the plaintiff under such circumstances. What the defendant did, therefore, was a source of tangible damage and loss to the plaintiff, perhaps measured correctly as was done in the court below as being the amount of the principal unpaid on his loan.

So far it seems to me that all is clear sailing for the plaintiff; but we come to the proposition that plaintiff did *not* avail himself of what I think was his undoubted privilege, to redeem the pledged ring during the lifetime of the pawn contract. It will be kept in mind that the contract expired on the seventh of September, whereas it appears that sometime, not until into the second week in September did the plaintiff go to see the defendant. I have held and decided that the plaintiff had a right to require and expect the defendant to hold the ring, subject to the rights of the plaintiff and his pledgors, up to the seventh of September.

I am not prepared to hold, and think I must decide, that there

was no obligation on the part of the defendant to hold the ring any further than that. The contract expired on that date. The ordinance requirements were lifted on that date; and it was within the province of the defendant to have taken his money on and after the 7th of September, 1928, from any one whomsoever who would pay him. He had not promised the original pledgors to do anything more than that, and I have held that any alleged or claimed promises which he might have made to do anything more, were *nudum pactum*. It, therefore, seems to me that to make out a cause of action against this defendant, the plaintiff must have proven that he stood ready to redeem the pledged ring for the amount which the defendant had against it, and tendered performance sometime not later than September 7, 1928. I think and must decide that by his failure so to do he failed to make out a cause of action against this defendant.

But one question remains and that is whether by divesting himself, as I think wrongfully and in disregard of plaintiff's rights, of the possession of the ring six days before September 7, 1928, a cause of action had accrued in favor of the plaintiff and against the defendant, which might survive the failure of the plaintiff to protect his rights by taking up the ring during the lifetime of the pawn contract.

Upon mature reflection I am convinced that this cannot be true. Doubtless, I think, the defendant laid himself open to liability by disposing of the pawned ring to someone who was not the holder of the pawn ticket; but I cannot see that any cause of action really accrued or would accrue until the plaintiff during the lifetime of the pawn contract did go to the defendant, tender the $212 and demand the ring. This he never did, and, apparently, unless he would very seriously change his mind as to the value of the ring, he never would do. It seems to me that it, therefore, follows that the failure of the defendant to hold the ring for six days longer than he did has not resulted in any damage to the plaintiff. It cannot be supposed that within that time he would go and seek to redeem the ring, in fact we *know* that he did not do that. I think I must, therefore, decide that when he let the 6th or perhaps the 7th of September, 1928, pass without trying to realize upon his security, he had and has no claim against this defendant.

I, therefore, reach the conclusion that the court below was in error, both in refusing to nonsuit the plaintiff at the end of his case and again in rendering a judgment in favor of the plaintiff. The judgment must, therefore, be reversed, with costs.