In the Matter of DOROTHY THOMSON, Petitioner, against WHITNEY ELLIOTT, Respondent.

Children's Court, Westchester County, June 29, 1934.

*David Moses*, for the petitioner.

*Budd, Coffey & Bertine*, for the respondent.

SMYTH, J. The Constitution, article 6, section 18, authorized the Legislature to establish Children's Courts and to confer upon them such jurisdiction " as may be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors * * * and to compel the support of a wife, child, or poor relative by persons legally chargeable therewith who abandon or neglect to support any of them." It is contended in this filiation proceeding that said section should be construed to refer only to children in being, and that consequently Children's Court Act, section 6, subdivision 3, conferring upon the court exclusive jurisdiction to hear and determine such proceedings prior to the birth of a child, is unconstitutional and void.

It will be observed, however, that the constitutional provision referred to allows considerable latitude to the Legislature in determining the extent of the jurisdiction which " may be necessary " to assure protection and support of children. The question to be determined, therefore, is whether the Legislature, in the exercise of the judgment and discretion thus vested in it, has transgressed beyond any reasonable interpretation which might be given to the wording of the section of the Constitution in question. In resolving this question it should be borne in mind that there is a presumption in favor of constitutionality. A legislative act should not be declared unconstitutional unless so proven beyond a reasonable doubt. (*Schieffelin* v. *Goldsmith*, 253 N. Y. 243; *People* v. *Nebbia*, 262 id. 259; *Atkins* v. *Hertz Drivurself Station, Inc.*, 237 App. Div. 31; affd., 261 N. Y. 352; *Gardner* v. *Ginther*, 232 App. Div. 296; affd., 257 N. Y. 578; *Post* v. *Cowan*, 236 App. Div. 26.) I think also that weight should be given to the legislative interpretation of the Constitution, as well as to the fact that the statute framed in pursuance thereof has been acted upon without question for a period of more than ten years subsequent to the establishment of Children's Courts. (*People ex rel. Cotte* v. *Gilbert*, 226 N. Y. 103; *General Fireproofing Company* v. *Keepsdry Const. Co.*, 225 id. 180; *People ex rel. Moriarty* v. *Creelman*, 206 id. 570.)

The jurisdiction conferred upon the court is to hear and determine filiation proceedings as provided in the Domestic Relations Law. Said statute, according to its wording, was intended to provide for " the support and education of the child." (Dom. Rel. Law, §§ 120, 122.) Thus it appears that the general purpose of the legislation is in harmony with the Constitution.

The common law did not make a father of an illegitimate child liable for the support of the child or mother. Liability exists solely by virtue of statute. (*People ex rel. Lawton* v. *Snell*, 216 N. Y. 527; *Bissell* v. *Myton*, 160 App. Div. 268; affd., 214 N. Y. 672.) Such

alleged father, by denying paternity, serves notice of his refusal to support the child when born. The first step necessary to be taken, therefore, to establish his statutory liability is to determine the question of paternity. The Legislature undoubtedly had power to provide for the determination of such question in advance of birth of the child. The situation is somewhat analogous to anticipatory breach of contract. The repudiation of the obligation gives rise to a cause of action, although the time of performance may not have arrived. (*Howard* v. *Daly*, 61 N. Y. 362; *Drake* v. *Hodgson*, 192 App. Div. 676; *Aker* v. *Fredella Co., Inc.*, 227 id. 226.)

In this view of the matter, we need not consider whether the word " child," as used in the Constitution, should be construed to include the child *en ventre sa mere*. We may conclude that the Legislature had power to provide for the trial of the issue of paternity in advance of birth, in order that the question of liability for the support and maintenance of the child when born might be decided in a timely and effective manner. The Legislature may have considered that the public interest, as well as the interests of the child, would best be served by a determination of that issue during the mother's pregnancy, lest her testimony, which is often the only testimony available on the question of paternity, be lost as the result of her death during childbirth. Under the statute such proceedings may be instituted during the pregnancy of the mother or after the birth of the child. (Dom. Rel. Law, § 122.) An order of filiation may be made and jurisdiction may be retained for the purpose of increasing or decreasing the amount fixed thereby in accordance with the needs of the child. (Dom. Rel. Law, §§ 127, 131.)

I find no difficulty, therefore, in holding the law constitutional in so far as it permits a trial of the issue of paternity in advance of the birth of a child, followed by a suitable provision for the support of the child when born. Manifestly such proceedings have to do solely with the support of a child in being at the time the support order becomes effective.

The statute further declares, however, that " in addition to providing for the support and education, the order shall also provide for the payment of the necessary expenses   *   *   *   in connection with her confinement and recovery; for the funeral expenses if the child has died;   *   *   *   and such expenses in connection with the pregnancy of the mother as the court may deem proper." (Dom. Rel. Law, § 127.)

The proper support of a child commences before its delivery into the outer world. A legislative scheme intended to insure the physical and mental health of a child would be incomplete and defective which permitted neglect of the child through neglect of

the mother during the pre-natal period, for its physical and mental health is inseparably connected with sufficient nourishment and comfort for her during such period. The Legislature in its discretion reasonably determined, therefore, that for the proper support of the child it was necessary to confer upon the court some power to insure its birth in a normal, healthy condition.

We may go farther, if necessary, and construe the word " child " to include the child *en ventre sa mere*. Even in common parlance a father would be expected to provide for the " child " in the mother's womb, by extending to her the required care.

There is ample precedent in the law also for so construing the word, when to so hold is required by justice and convenience or would result in advantage to the child. (*Drobner* v. *Peters*, 232 N. Y. 220; *Matter of Wells*, 129 Misc. 447.) " When just ice or convenience requires, the child in the womb is dealt with as a human being, although physiologically it is a part of the mother." (*Drobner* v. *Peters, supra.*) Such construction is reasonable in view of the general scheme of the statute relating to the support of children and to filiation proceedings, would sustain the statute in question, and is, therefore, to be preferred to one equally reasonable which would invalidate it. (*People* v. *Mancuso*, 255 N. Y. 463.)

Respondent also requests an order directing the mother and child, when born, to submit to blood tests for the purpose of determining paternity. Under the decision of the Appellate Division in *Beuschel* v. *Manowitz* (241 App. Div. 888) I feel constrained to deny the motion.

On the issue of fact, I am satisfied that petitioner has successfully borne the burden of proof resting upon her. Accordingly, an order of filiation will be entered.