### ALBANESE v. RICHTER.
### Civil Action No. 7467.

District Court, D. New Jersey.
Sept. 11, 1946.

772

Isadore Glauberman, of Jersey City, N. J., for plaintiff.

Arthur T. Vanderbilt, of Newark, N. J., for defendant.

FAKE, District Judge.

The complaint in this cause is laid in a sphere of law which is very seldom re-

sorted to in our Federal courts. Jurisdiction is based on diversity of citizenship and the statutory amount.

The plaintiff, an infant filius nullius, now two years of age, complains by his mother as next friend, alleging that defendant is his father and seeks from him maintenance, support and education under the New York Domestic Relations Law, Consol. Laws, c. 14, §§ 120 and 122. The like redress under the New Jersey statutes, R.S. 9:16–2 and 9:16–3, N.J.S.A., is sought under a separate count.

The complaint alleges that a few months before the birth of plaintiff, his putative father and mother entered into a written contract, according to the terms of which the mother declared that the defendant was not the father of her expected child and therein she renounced all claim against the defendant by reason of her pregnancy and further renounced any claim against defendant for the support and education of said child. The said mother also released the defendant and orally agreed to conceal the fact that ·the defendant was plaintiff's father. In consideration whereof the defendant paid the mother $7,500. Plaintiff seeks to have the aforesaid agreements and releases declared null and void because they were entered into by its mother under threats and constitute a fraud on the rights of the plaintiff.

Motions to dismiss the complaint are now made on the ground of lack of jurisdiction over the subject matter and also because the amount involved is less than $3,000.

At common law a putative father is under no legal liability to support an illegitimate child. The common law of New York and New Jersey are alike in this regard.[1] The common law, however, has been changed by statute in both states. The New York statute provides, Section 120: "The parents of a child born out of

[1] Layton v. Cooper, Sup., 1806, 2 N.J. L. 62 (Sup.Ct.1806) ; In re Vieweger, Ch., 1922, 93 N.J.Eq. 527, 117 A. 291 ; People ex rel. Lawton v. Snell, 216 N.Y. 527, 111 N.E. 50, Ann.Cas.1917D, 222 ; Todd v. Weber, 1916, 95 N.Y. 181, 47 Am.Rep. 20 ; Bissell v. Myton, 160 App.Div. 268, 145 N.Y.S. 591, affirmed 214 N.Y. 672, 108 N.E. 1089 ; Thomson v. Elliott, 1934, 152 Misc. 188, 273 N.Y.S. 898 ; Anonymous v. Anonymous, 1940, 174 Misc. 906, 22 N.Y.S.2d 598 ; Schneider v. Kennat, 1944, 267 App.Div. 589, 47 N.Y.S.2d 180, Appeal Denied 267 App.Div. 954, 48 N. Y.S.2d 471.

wedlock are liable for the necessary support and education of the child." Section 122 provides: "A proceeding to compel support and education in accordance with this article may be brought by the mother * * * or if the child is or is likely to become a public charge * * * by a public welfare official * * * after the death of the mother or in case of her disability, it may also be brought by the child acting through a guardian or next friend." The infant here is itself bringing the suit and the mother appears in a representative capacity only. This legislation being in derogation of the common law must be strictly construed and nowhere in the New York act is found any authority for the infant itself to sue while the mother is still living.

■ The New Jersey statute R.S. 9:16-2, N.J.S.A., provides: "A child born out of wedlock shall be entitled to support and education from its father and mother to the same extent as if born in lawful wedlock." The next section of the act authorizing suit, 9:16-3, provides: "Proceedings to enforce the obligations imposed by section 9:16-2 of this title may be maintained by one parent against the other, or by the person having physical custody of the child, or, if the child is or is likely to become a public charge, the proceedings may be instituted by the overseer of the poor * * *." Here again no authority is found permitting an infant to sue its putative father.

■ In Fontain v. Ravenel, 1885, 17 How. 369, 15 L.Ed. 80, at page 86, Justice McLean held:

"The courts of the United States cannot exercise any equity powers, except those conferred by Acts of Congress, and those judicial powers which the high court of chancery in England, acting under its judicial capacity as a court of equity, possessed and exercised at the time of the formation of the Constitution of the United States. Powers not judicial, exercised by the Chancellor merely as the representative of the sovereign, and by virtue of the King's prerogative as parens patriae are not possessed by the Circuit Courts."

Justice Taney, concurring in a separate opinion, said (17 How. at page 392, 15 L. Ed. at page 90):

"It remains to inquire whether the Constitution has conferred this prerogative power on the courts of equity of the United States.

"The 2d section of the 3rd article of the Constitution declares that the judicial power of the United States shall extend to all cases in law and equity specified in the section. These words obviously confer judicial power and nothing more; and cannot, upon any fair construction, be held to embrace the prerogative powers, which the King, as parens patriae, in England, exercised through the courts. And the chancery jurisdiction of the courts of the United States, as granted by the constitution, extends only to cases over which the courts of chancery had jurisdiction, in its judicial character as a court of equity. The wide discretionary power which the Chancellor of England exercises over infants, lunatics, or idiots, or charities, has not been conferred.

"These prerogative powers, which belong to the sovereign as parens patriae, remain with the States * * * Nobody will for a moment suppose that a court of equity of the United States could, in virtue of a state law, take upon itself the guardianship over all the minors, idiots, or lunatics in the State."

■ In reading the briefs submitted at the argument I have found no cases cited directly in point but I am firmly convinced upon a reading of the cases presented and some independent research that the case falls within that class above defined which federal courts have no jurisdiction to entertain.

■ Sharon v. Terry, 131 U.S. 40, 9 S.Ct. 705, 33 L.Ed. 94, is cited by plaintiff as authority for the exercise of jurisdiction to set aside the agreement. Here again, however, the infant has no authority to sue. Moreover, that case dealt only with the propriety of a review and did not go to the validity of the exercise of jurisdiction.

774

In view of the foregoing it is not necessary to pass upon the question as to the amount involved.

The motions to dismiss are granted.